# EXHIBIT 1

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## ASSOCIATE CIRCUIT DIVISION
## AT KANSAS CITY

| | | |
|---|---|---|
| **FUTURE FINANCE CORPORATION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1216-CV13289 |
| vs. | ) | |
| | ) | Division 27 |
| **TYRELL C. JACKSON and** | ) | |
| **LIANE K. JACKSON,** | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | |
|---|---|
| **TYRELL C. JACKSON and** | ) |
| **LIANE K. JACKSON, on their own** | ) |
| **behalf and on behalf of all others** | ) |
| **similarly situated,** | ) |
| | ) |
| Counterclaim Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| **JAY WOLFE USED CARS** | ) |
| **OF BLUE SPRINGS, LLC d/b/a** | ) |
| **FUTURE FINANCE CORPORATION,** | ) |
| | ) |
| Counterclaim Defendant. | ) |

## JOINT ANSWER AND COUNTERCLAIM

## ANSWER

For their Answer to Plaintiff's Petition On Promissory Note With A Deficiency Balance, defendants state:

1.     If "plaintiff" is meant to refer to Future Finance Company, L.L.C., Defendants admit that they executed the referenced promissory note contained in the Retail Installment Agreement

attached to Plaintiff's Petition, but deny each and every other allegation in paragraph 1

2.      If "plaintiff" is meant to refer to Future Finance Company, L.L.C., Defendants admit that they executed the referenced security agreement, but deny each and every other allegation in paragraph 1.

3.      If "plaintiff" is meant to refer to Future Finance Company, L.L.C., Defendants admit that they failed to make one or more installment payments and that the contract installment payments were accelerated, but deny each and every allegation in paragraph 3..

4.      If "plaintiff" is meant to refer to Future Finance Company, L.L.C., Defendants admit that Plaintiff obtained possession of the collateral and sold it, but deny each and every allegation in paragraph 4.

5.      Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 5, in that the allegations amount to nothing more than bare legal conclusions concerning the sale of the collateral, a sale to which Plaintiff inconclusively refers in paragraph 4 of its Petition as *either* a "public or private sale", absent any supporting particulars; moreover, to the extent the allegations can be said to state facts, they are denied.

6.      Defendants deny each and every allegation in paragraph 6.

7.      Defendants admit that the notices attached to Plaintiff's Petition were given, but deny that the notices satisfy the requirements of the Missouri statutes governing such notices.

8.      Plaintiff has failed to state a claim upon which relief may be granted.

9.      Upon dismissal of plaintiff's Petition, defendants will be entitled to recover their costs and reasonable attorney's fees from plaintiff, all as provided for in § 408.092 RSMo.

WHEREFORE, defendants pray that plaintiff's Petition be dismissed, that they be allowed to

2

go hence with their costs and reasonable attorney's fees and for such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

### Allegations Common to All Counts

For their Allegations Common to All Counts of their Counterclaim, Defendants/Counterclaim Plaintiffs (hereafter "Counterclaim Plaintiffs") state:

1. Counterclaim Plaintiffs bring this action as a class action against Plaintiff/Counterclaim Defendant (hereafter "Counterclaim Defendant"), on their own behalf and on behalf of the class of all others similarly situated, for Counterclaim Defendant's violation of the Uniform Commercial Code ("UCC") Article Nine, §§ 400.9-601 through 400.9-629 RSMo and violation of the Motor Vehicle Time Sales Act ("MVTSA"), Chapter 365 RSMo, in the course of Counterclaim Defendant's repossession and sale of the class members' motor vehicles and defendants' assertion of claims for alleged deficiency balances remaining after such sales. For Counterclaim Defendant's violation of the UCC, Counterclaim Plaintiffs seek the statutory damages provided for in § 400.9-625(c)(2) RSMo, as well as relief from deficiency balances claimed by defendant and relief from any adverse reports on made by defendant to credit reporting agencies regarding class member accounts. For Counterclaim Defendant's violation of the MVTSA, Counterclaim Plaintiffs seek an order barring Counterclaim Defendant from recovery of any time price differential, delinquency or collection charge on the class members' contracts and ordering Counterclaim Defendant to refund any such charges it has collected and to pay the class punitive damages and attorneys' fees, all as provided for under §§ 365.145, 364.150 and 408.562 RSMo for violation of the MVTSA.

3

## Parties

2.     Counterclaim Plaintiffs are residents of Kansas City, Jackson County, Missouri, residing at 4814 Overton Avenue, Kansas City, Missouri, who bring this Counterclaim on their own behalf and on behalf of all other similarly situated individuals, as described below.

3.     Counterclaim Defendant Jay Wolfe Used Cars of Blue Springs, LLC, is a Delaware limited liability company, with its principal place of business in Missouri, that: 1) registered to do business in Missouri with the Missouri Secretary of State on April 9, 2009; 2) is the surviving entity of a March 14, 2011, merger with Future Finance Company, L.L.C., a Missouri limited liability company formerly known as Wornall 103 Company, L.L.C., which was organized and registered with the Missouri Secretary of State on November 1, 2001; and 3) that has, since September 8, 2009, been registered with the Missouri Secretary of State as doing business under the fictitious name of Jay Wolfe Auto Outlet.

## General Allegations

4.     On or about January 18, 2010, Counterclaim Plaintiffs entered into a Retail Installment Agreement (hereafter "Agreement") with Counterclaim Defendant for the purchase and sale of a 2003 Ford Explorer, v.i.n. 1FMYU60EX3UA56686 (hereinafter "Ford"). A true and accurate copy of the Agreement is attached as Exhibit A.

5.     On or about November 5, 2010, Counterclaim Defendant took possession of the Vehicle from Counterclaim Plaintiffs and sent each of them a "Notice of Our Plan to Sell Property" (hereafter "Presale Notice"). True and accurate copies of the Presale Notices to Tyrrell Jackson and Liane Jackson are attached as Exhibits B-1 and B-2, respectively.

6.     After selling the Vehicle, Counterclaim Defendant, on or about February 14, 2011,

4

sent Counterclaim Plaintiffs a "Notice of Sale of Collateral and Possible Deficiency" (hereafter "Post-sale Notice") advising them that they owed Counterclaim Defendant a remaining deficiency balance of $2,142.05, which deficiency balance included "Attorney and / or Legal Fees" of $1,458.99, plus continuing interest at the rate of $1.43 per day on such amount. True and accurate copies of the Post-sale Notices to Tyrrell Jackson and Liane Jackson are attached as Exhibits C-1 and C-2, respectively.

## Count I – Violation of the Uniform Commercial Code

7.      Counterclaim Defendant's Presale Notice violates §§ 400.9-210(f), 400.613(1)(D) and 400.9-614(1)(A) RSMo, in that it states, "We will charge you $25.00 for the amount you owe us within the last six months." This statement was contrary to, and in violation of, § 400.9-210(f) RSMo, which provides debtors the right to request an accounting and further provides, in pertinent part, that a debtor "is entitled *without charge* to one response to a request under this section during any six-month period" and that the secured party may only "require payment of a charge not exceeding twenty-five dollars for each *additional* response." (Emphasis supplied.)

8.      Counterclaim Defendant's inclusion of $2,142.05 in "Attorney and / or Legal Fees" as an expense of the sale of the Vehicle, when, on information and belief, no such expense was incurred or paid by Counterclaim Defendant in connection with the sale of the Vehicle, violates § 400.9-615(a) RSMo, which only allows "reasonable attorney's fees and legal expenses incurred by the secured party" to be deducted from the proceeds of the disposition of the collateral.

9.      Counterclaim Defendant's inclusion of $2,142.05 in "Attorney and / or Legal Fees" as an expense of the sale of the Vehicle, when, on information and belief, no such expense was reasonably incurred or paid by Counterclaim Defendant in connection with the sale of the Vehicle,

5

violates § 400.9-616(c)(4) RSMo, which required Counterclaim Defendant to provide Counterclaim Plaintiffs with an explanation of Counterclaim Defendant's calculation of any deficiency, which explanation could include only such attorney's fees as were known to Counterclaim Defendant to relate to the disposition of the collateral.

10. As a result of Counterclaim Defendant's violation of UCC requirements, as alleged above, Counterclaim defendant is absolutely barred from asserting a claim for a deficiency against Counterclaim Plaintiffs and is liable to Counterclaim Plaintiffs for the statutory damages provided for in § 400.9-625(c)(2) RSMo, that is, "not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price" appearing on the face of the contract.

## Count II – Violation of the Motor Vehicle Time Sales Act

11. By charging Counterclaim Plaintiffs for attorney's fees and/or legal expenses not reasonably incurred or paid, Counterclaim Defendant violated § 365.100 RSMo, which limits attorney's fees to an amount "not exceeding fifteen percent of the amount due and payable under the contract where the contract is referred for collection to any attorney not a salaried employee of the holder" and which limits expenses recoverable against Counterclaim Plaintiffs to "reasonable expenses incurred in the origination, servicing, and collection of the amount due under the contract."

12. As a result of the violations alleged in the preceding paragraph, Counterclaim Defendant is barred from recovery of any time price differential, delinquency or collection charges on the Counterclaim Plaintiffs' contract, as provided in § 365.150 RSMo, and Counterclaim Defendant is further liable, as provided in §§ 365.145 and 408.562 RSMo, for the actual damages, punitive damages and attorneys' fees of Counterclaim Plaintiffs.

6

## Class Action Allegations

13.     On information and belief, Counterclaim Defendant has repossessed the vehicles of numerous similarly-situated persons who purchased their vehicles under substantially similar Retail Installment Agreements held by Counterclaim Defendant, whose vehicles were repossessed and subsequently sold by Counterclaim Defendant, and to whom Counterclaim Defendant sent substantially similar form Presale Notices and substantially similar form Post-sale Notices following the repossession and sale of their vehicles.

14.     Counterclaim Defendant has, on information and belief, charged numerous similarly situated persons for "Attorney and / or Legal Fees" that Counterclaim Defendant described, in the Post-sale Notices it sent to such persons, as "Expenses of Sale", which fees were not in fact reasonably incurred or paid by Counterclaim Defendant in connection with the disposition of the collateral.

15.     Counterclaim Plaintiffs bring this action pursuant to Missouri Supreme Court Rule 52.08 on behalf of themselves and all others similarly situated.

16.     The class of those similarly situated consists of all individuals whose vehicles were repossessed, either voluntarily or involuntarily, and subsequently sold by Counterclaim Defendant. The class is further divided into the following subclasses:

### Class One

Such individuals to whom Counterclaim Defendant sent a Presale Notice substantially similar to the ones attached to this Counterclaim as Exhibits B-1 and B-2, in which the following sentence appears: "We will charge you $25.00 for the explanation of the amount you owe us within the last six months."

7

## Class Two

Such individuals to whom Counterclaim Defendant sent a Post-sale Notice substantially similar to the one attached to this Counterclaim as Exhibits C-1 and C-2, in which a charge for "Attorney and / or Legal Fees" appears beneath the "Itemization of Expenses of Sale."

17. There are questions of law and fact common to the members of the class as alleged, and that the claims of the named Counterclaim Plaintiffs are typical of the claims of the class members, in that, among other things:

 a) the Counterclaim Plaintiffs and the class members they represent in Class One were all sent form pre-sale notices telling them they would be charged $25.00 for an explanation of the amount they owed, which notices Counterclaim Plaintiffs contend violated the UCC, as alleged above;

 b) the Counterclaim Plaintiffs and the class members they represent in Class Two were all sent form post-sale notices in which a charge for "Attorney and / or Legal Fees" appears beneath the "Itemization of Expenses of Sale", which charges Counterclaim Plaintiffs contend violated the UCC and the MVTSA, as alleged above;

18. The Counterclaim Plaintiffs will fairly and adequately protect the interests of the class members, in that they have no conflicts with the interests of the class members and they have retained counsel with experience in successfully litigating class actions.

19. The class as defined is certifiable pursuant to Missouri Supreme Court Rule 52.08(b)(3), in that the questions of law or fact common to the members of the class will predominate over any questions affecting only individual members, and a class action is superior to other methods for a fair

8

and efficient adjudication of the controversy and cause of action stated in this Counterclaim.

## Relief Requested

**WHEREFORE**, the Counterclaim Plaintiffs, on behalf of themselves and members of the class, respectfully pray that this Court:

a)      Certify this action as a class action as defined in this Counterclaim pursuant to Missouri Supreme Court Rule 52.08;

b)      Grant the Counterclaim Plaintiffs and the members of the class judgment for their respective damages, including statutory damages under § 400.9-625(c)(2) RSMo and a refund of any time price differential, delinquency or collection charges, plus interest thereon;

(c)      Assess punitive damages against the Counterclaim Defendant in order to punish and deter it and others from engaging in like conduct in the future;

d)      Award to the Counterclaim Plaintiffs and the members of the class the costs of this action and attorney's fees;

e)      Declare that Counterclaim Defendant is barred from seeking deficiency balances from Counterclaim Plaintiffs and the class members and order Counterclaim Defendant to refund any amounts paid by them to Counterclaim Defendant subsequent to the date their vehicles were repossessed;

f)      Order Counterclaim Defendant to cease reporting to any credit reporting agencies any repossession and/or deficiency balances on the class members' accounts;

g)      Grant such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Counterclaim Plaintiffs demand trial by jury in this matter.

9

Respectfully submitted,

**SLOUGH CONNEALY IRWIN
& MADDEN LLC**


By: _____
    Dale K. Irwin        #24928
    Fred Slough        #23915
    Gina Chiala        #59112
    1627 Main Street, Suite 900
    Kansas City, Missouri 64108
    (816) 531-2224
    (816) 531-2147 fax
    dirwin@scimlaw.com

**Attorneys for Defendants/Counterclaim Plaintiffs**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was hand-delivered in open court to

Todd A. Norris, Attorney for Plaintiff, and an electronic copy of same, in PDF format, was also sent

to Mr. Norris at tnorris@holbrookosborn.com, all on this 19th day of September, 2012.


_____
Attorney for Defendants/Counterclaim Plaintiffs

10

**A**

## RETAIL INSTALLMENT AGREEMENT – Dealer Paper Motor Vehicle (Simple Interest)

(Name of first Debtor) **TYRRELL C JACKSON** (Address) **2403 NE 2ND STREET BLUE SPRINGS MO 6401**

and (Name of second Debtor) **LIANE K JACKSON** (Address) **2403 NE 2ND STREET BLUE SPRINGS MO 64014**

being all of the undersigned (collectively, Debtor), jointly and severally, has/have purchased from (Name of Secured Party) **JAY WOLFE AUTO OUTLET**

(Address) **1500 S OUTER ROAD** **BLUE SPRINGS, MO** **64015**

the goods and personal property identified below and all accessions thereto. To secure payment of the Total of Payments set out below and future advances described in this agreement, Debtor, jointly and severally if more than one, hereby gives, grants and conveys to Secured Party a payable to Secured Party representing the Total of Payments and future advances described in this agreement, Debtor, jointly and severally if more than one, hereby gives, grants and conveys to Secured Party a purchase money security interest in the goods and personal property listed below or on an attached sheet and all accessions thereto, together with the proceeds thereof, proceeds of insurance policies thereon and on Debtor's life and health, if indicated below, including rebates of insurance premiums, and any accessories, attachments, equipment and replacements parts installed therein (collectively, the Collateral). Secured Party reserves, to the extent permitted by law, all rights of setoff against any deposit accounts or other property of Debtor at or under the control of Secured Party, without notice, except as required by law.

| New or Used | Year Model | Trade Name | Model Name or Number | Serial Number | No. Cyl. | Ton Capacity if Truck | Other (Describe) |
|---|---|---|---|---|---|---|---|
| USED | 2003 | FORD | EXPLORER | 1FMYU60EX3UA56686 | 6 | | |

### CREDIT SALE DISCLOSURE

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down-payment of |
|---|---|---|---|---|
| **23.95** % | $ **5197.94** | $ **10849.00** | $ **16046.94** | $ **800.00** $ **16846.94** |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 182 | 88.17 | ~~Monthly~~, beginning **01/25/2010** WEEKLY |

**Late Charge:** If a payment is more than 15 days late, you will be charged $25.00 or 5% of the full amount of the installment due, whichever is less, $10.00 minimum, but not to exceed $5.00 if the installment due is $25.00 or less.

You may obtain property insurance from anyone you want that is acceptable to

**FUTURE FINANCE COMPA**
(creditor)

Insurance: Credit life and accident and health insurance are not required to obtain credit and will not be provided unless you indicate what coverage you want and agree to pay the additional cost disclosed below in paragraph 4 of the "Itemization of Amount Financed" by signing below to the right of the coverage described. If two or more persons sign this Agreement, all are entitled to obtain credit life insurance, but only the first named (and not the joint) Debtor may obtain credit accident and health insurance.

| | | | | |
|---|---|---|---|---|
| Credit Life | ☐ Single ☐ Joint | I want credit life insurance. Signature | | Signature |
| Credit Accident and Health | | I want credit accident and health insurance. Signature | | |
| Credit Life and Accident and Health | ☐ Single ☐ Joint | I want credit life and accident and health insurance. Signature | | Signature |

If you get the insurance from

_____
(creditor)

for a term of _____

you will pay $ _____ **N/A**

Security: You are giving a security interest in:
XX the goods or property being purchased.
☐ _____
(brief description of other property).

Collateral securing other credit extended by us to you also may secure this credit.

Filing fees $ **N/A** Non-filing insurance $ **N/A**

**Prepayment:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds, rebates and penalties, if any.

e means an estimate

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN NOR PROVIDED FOR BY THIS CONTRACT UNLESS A SPECIFIC CHARGE FOR LIABILITY INSURANCE IS DISCLOSED BELOW.**

### Itemization of Amount Financed

1. Cash Sale Price (including any accessories, extras, services, and taxes).... **INCLUDES ADMIN FEE OF $199.00** ..$ **11649.00** (1)
2. Less Down Payment = Trade-in Value $ **N/A** minus Payoff $ **N/A** (Equity $ **N/A** )
   plus Cash Down Payment $ **800.00** Your Trade-in is: Year **N/A** Make **N/A** Model **N/A** ..$ **800.00** (2)
3. Unpaid Balance of Cash Price (Amount paid on your Account) (1 minus 2)...$ **10849.00** (3)
4. Amounts Paid to Others on Your Behalf:
   A. To Credit Life Insurance Co. for a term of **N/A** (single life) * $ **N/A** (A)
   B. To Credit Life Insurance Co. for a term of **N/A** (joint life)* $ **N/A** (B)
   C. To Accident and Health Insurance Co. for a term of **N/A** $ **N/A** (C)
   D. To Property Insurance Co. for a term of **N/A** $ **N/A** (D)
   E. To Liability Insurance Co. for a term of **N/A** $ **N/A** (E)
   F. Paid to Public Officials For Title, License, Lien Fee & Registration Fees (itemize)
   _____ $ **N/A** (F)
   G. Other Charges (Identify Who Must Receive Payment and Describe Purpose)*
   To **N/A** For Prior Loan Balance, ...... **N/A** (G₁)
   (Prior Loan Balance minus Trade-in Value, if Prior Loan Balance is greater than Trade-in Value)
   To _____ $ **N/A** (G₂)
   Total Amounts Paid to Others on Your Behalf (A+B+C+D+E+F+G₁+G₂) ...$ **N/A** (4)
5. Amount Financed - [Amount of Credit you will get (3+4)] ...$ **10849.00** (5)
6. Finance Charge. ...$ **5197.94** (6)
7. Total of Payments (5+6). ...$ **16046.94** (7)

*We may require or receive a portion of these charges.

A Service Contract is not required. This is an option which costs the amount indicated below. The ~~insurance~~ described in the contract or

EXHIBIT A

E. To Liability Insurance Co. for a term of _____

F. Paid to Public Officials For Title, License, Lien Fee & Registration Fees (itemize)
$_____ N/A (F)

G. Other Charges (Identify Who Must Receive Payment and Describe Purpose)*
To N/A _____ For Prior Loan Balance,.................. $_____ N/A (G₁)
(Prior Loan Balance minus Trade-in Value, if Prior Loan Balance is greater than Trade-in Value)
To _____ For _____ $_____ N/A (G₂)

Total Amounts Paid to Others on Your Behalf (A+B+C+D+E+F+G₁+G₂) ................... $_____ (4)

5. Amount Financed - (Amount of Credit you will get (3+4)) ................................... $ 10849.00 (5)

6. Finance Charge. ............................................................................... $ 5197.94 (6)

7. Total of Payments (5+6) .................................................................... $ 16046.94 (7)
*We may retain or receive a portion of these charges.

A Service Contract **is not required.** This is an option which costs the amount indicated below. The Service Contract is more fully described in the contract or certificate describing it. Please read those documents before signing this agreement. If you elect this option by signing below, its cost is included in the Amount Financed under this agreement.
Service Contract: $_____ N/A Deductible      Term: N/A mos.      Cost: $_____ N/A
Debtor(s) want(s) a Service Contract.
Debtor: _____ Date: _____ Debtor: _____ Date: _____

Debt Cancellation (GAP) Coverage **is not required.** This is an option which costs the amount indicated below. The Debt Cancellation Coverage is more fully described in the contract or certificate describing it. Please read those documents before signing this agreement. If you elect this option by signing below, its cost is included in the Amount Financed under this agreement.
Debt Cancellation Coverage:      Term: N/A mos.      Cost: $_____ N/A
Debtor(s) want(s) Debt Cancellation Coverage.
Debtor: _____ Date: _____ Debtor: _____ Date: _____

NOTICE TO THE PURCHASER(S)/DEBTOR: SEE "NO WARRANTIES" PARAGRAPH ON THE REVERSE SIDE.
NOTICE TO THE BUYER/DEBTOR:  DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.
ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT, INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT, ARE NOT ENFORCEABLE. TO PROTECT YOU (DEBTOR) AND US (SECURED PARTY) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.
All of the provisions on the reverse hereof are incorporated herein by reference and constitute a part of this agreement.

DEBTOR ACKNOWLEDGES THAT ON THIS 18 DAY OF JAN , 2010 , THIS AGREEMENT WAS EXECUTED AND THAT ON SAID DAY A FULLY COMPLETED COPY OF THIS AGREEMENT EXECUTED BY BOTH SECURED PARTY AND DEBTOR HAS BEEN DELIVERED TO DEBTOR.
Secured Party JAY WOLFE AUTO OUTLET                Debtor _____
By _____                                   Debtor _____

Non-Purchaser Owner(s) of Collateral (to be completed only when non-purchasers own an interest in the Collateral).
Each of the undersigned understands he/she is not responsible for paying any of the debt of Debtor secured by this agreement, but agrees Secured Party has, and hereby grants to Secured Party, a security interest in the Collateral and agrees each of the undersigned is bound by all the terms of this agreement which relate to such security interest until Debtor has performed all of the obligations under this Agreement.
_____ Date: _____                         _____ Date: _____
Non-Purchaser Owner of Vehicle                      Non-purchaser Owner of Vehicle
THE ANNUAL PERCENTAGE RATE MAY BE NEGOTIABLE WITH THE SELLER/SECURED PARTY. THE SELLER/SECURED PARTY MAY ASSIGN THIS AGREEMENT AND RETAIN ITS RIGHT TO RECEIVE A PART OF THE FINANCE CHARGE.

## PROMISSORY NOTE

$ 10849.00 _____ KANSAS CITY _____, Missouri  Date 01/18/2010

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to the order of FUTURE FINANCE COMPANY LLC
the sum of ____ TEN THOUSAND EIGHT HUNDRED FORTY NINE AND 00/100 ____ 10849.00 ____ ) at the place designated by the holder of this Note, plus interest from the date of this Note at the rate of 23.95 percent per annum, in the number of installments and in the amount(s) stated in the "CREDIT SALE DISCLOSURE" portion of the Retail Installment Agreement of which this Note is a part, the first installment being due on 01/25/2010 _____ , and each successive installment being due on the same day of each successive month. The final installment may be more or less depending on the dates and amounts of prior payments. The installments set forth above are minimum payments. Greater or more frequent payments may be made. Debtor may prepay the loan, in whole or in part, at any time without penalty. In the case that interest has been charged on the loan, but not earned, the interest shall be refunded in accordance with applicable law. All payments will be applied first to any accrued but unpaid interest and the balance, if any, to costs and expenses owed hereunder, and then to principal. Each maker, guarantor, endorser and surety of this Note waives presentment, notice of dishonor, protest and notice of protests and diligence in bringing suit on this Note and consents that the time of payment of any or all installments of this Note may be extended from time to time and more than one time without notice and without affecting their liability. The undersigned agree(s) to pay a late charge on each installment received by the holder of this Note that is more than 15 days late. The late charge will equal $25.00 or 5% of the full amount of the installment that was due, whichever is less, with a minimum charge of $10.00 (not to exceed $5.00 if the installment due is $25.00 or less). In addition, in the event any installment required under this Note is made with a check, draft or other negotiable instrument that is returned or dishonored, the undersigned agree(s) to pay the actual charges for the processing of such instrument, plus a fee of up to $25.00. If any of the said installments, or any part thereof, are not paid when due, then the entire indebtedness then remaining unpaid may, at the option of the holder hereof, become immediately due and payable after the giving of any notice and expiration of any right to cure required by law. The undersigned agree(s) to pay all expenses incurred by the holder of this Note in asserting or enforcing its rights under this Note, including, without limitation, all reasonable attorney and paralegal fees and their out-of-pocket costs, and all legal, litigation, court (including bankruptcy and appellate) and other similar costs, allowable by law that are incurred by the holder of this Note before or after legal proceedings are commenced or concluded, plus interest on such expenses at the rate stated above in this Note.

Witness _____                              Debtor _____
                                                    Debtor _____

## DEBTOR REPRESENTS, AGREES AND WARRANTS:

1. Debtor understands Secured Party intends to assign the Promissory note executed by Debtor (the Note) and to assign this agreement. Secured Party may do so without notice to Debtor. If the Note is transferred and/or assigned, the holder of the Note and transferee and assignee of this agreement will have all of Secured Party's rights and remedies under this agreement.

2. No Warranties. Debtor acknowledges and agrees that no warranties, representations and/or promises, express or implied, have been made by Secured Party to Debtor with respect to the design, compliance with specifications, operation or condition of or as to the quality of the material, equipment, workmanship, merchantability, suitability, fitness for a particular purpose or otherwise of the Collateral or any of its components unless same is endorsed in writing on this agreement or is contained in a separate instrument duly executed. Provided, however, this waiver does not apply to any express warranty made by the manufacturer or to any warranty, the waiver of which is prohibited by law.

3. Used Motor Vehicle Purchasers Guide. If you are buying a used vehicle under this agreement, federal regulations may require a special Purchasers Guide to be displayed on the window of the vehicle. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

4. EMISSIONS INSPECTION NOTICE: If the vehicle is subject to Missouri emissions inspection and it is sold without prior inspection and approval, Debtor may return the vehicle to Secured Party within 10 days, provided it has no more than 1,000 additional miles since the date of sale, to have the Secured Party repair the vehicle and provide an emission certificate and sticker within five working days, if the vehicle fails, upon inspection, to meet the emissions standards, or enter into any mutually acceptable agreement with Secured Party.

5. Any extension of the time for payment of any installment secured under this agreement, or the acceptance of only a part of such installment, or the failure of Secured Party to enforce the strict performance of any covenant, promise or condition contained in the Note or in this agreement to be performed by Debtor, will not operate as a waiver of the right of Secured Party thereafter to require that the terms of the Note and this agreement be strictly performed. No party to this agreement will be discharged from liability to Secured Party by reason of Secured Party's extending the time for payment of an installment or installments due under the Note, or by reason of Secured Party's waiver or modification of any terms of the Note or of this agreement.

6. Debtor will not sell, lease, waste or otherwise dispose of the Collateral or execute any financing statement covering the Collateral or create any security interest in the Collateral, except that created by this agreement and as disclosed in paragraph 15 below.

7. Debtor will keep the Collateral insured at all times, at Debtor's cost, to protect Secured Party against risk of loss, damage or destruction of or to the Collateral by fire, theft, collision and other casualties. Such insurance: (a) must never be in an amount less than the total unpaid balance secured by this agreement; (b) must be placed with such insurance company, and under such terms and conditions as may be satisfactory to Secured Party; and (c) must name Secured Party as mortgagee, loss payee and beneficiary. Debtor will furnish Secured Party with certificates of insurance, or other evidence satisfactory to Secured Party, confirming compliance with the terms of this paragraph.

**COLLATERAL PROTECTION INSURANCE NOTICE: If Debtor fails to provide Secured Party with evidence of the insurance coverage required under this agreement, Secured Party may, but will not be required to, purchase insurance at Debtor's expense to protect its own interest in the Collateral. This insurance may, but need not, protect Debtor's interests. The coverage that Secured Party purchases may not pay any claim that Debtor makes or any claim that is made against Debtor in connection with the Collateral. Debtor may later cancel any insurance purchased by Secured Party, but only after providing Secured Party with evidence that Debtor has obtained insurance as required under this agreement. If Secured Party purchases insurance for the Collateral, Debtor will be responsible for the cost of that insurance, including the insurance premium, interest and any other reasonably related reasonable charges Secured Party may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. At Secured Party's option, after written notice to Debtor, the cost of such insurance (including interest thereon at the rate applicable to the Note and other charges) either will be (i) paid by Debtor to Secured Party within fifteen (15) days after written demand, (ii) added to the remaining unpaid principal balance of the Note, financed at the interest rate applicable to the Note and amortized over the remaining term of the Note, (iii) paid in full at the end of the term of the Note or (iv) paid in any other manner Secured Party may lawfully require. Debtor understands and acknowledges that the cost of the insurance obtained by Secured Party may be more than the cost of insurance Debtor may be able to obtain on Debtor's own.**

If Debtor fails to comply with any of Debtor's obligations regarding insurance coverage required under this agreement, Debtor expressly authorizes Secured Party (or any agent or affiliate of Secured Party) to act as agent in the procurement of insurance for the Collateral, and to receive any commission or other compensation paid by the issuer for procuring such insurance.

Debtor hereby assigns to Secured Party any proceeds of any insurance written in connection with this agreement, including, without limitation, any returned premiums and dividends, as additional security, agreeing that Secured Party may cancel any such insurance upon default by Debtor and apply refunds to the balance then secured by this agreement. To the extent of the security interest granted by this agreement, Debtor hereby appoints Secured Party the agent and the attorney for Debtor in procuring, adjusting and cancelling such insurance and endorsing settlement drafts. In the event of loss or damage to the Collateral, Secured Party is expressly authorized (but not required) to, and

at Secured Party's request, will assemble the Collateral and make it available to Secured Party at such place as is designated by Secured Party, which will be reasonably convenient, it being specifically agreed by Debtor that any place in the city where this agreement is made which may be designated by Secured Party will be deemed reasonably convenient to Debtor and Secured Party. Additionally, Secured Party may take immediate possession of the Collateral without notice, after then notice required by applicable law, and may take the Collateral from Debtor's property or the property where the Collateral is stored, so long as such taking is done peaceably. If personal property in which Secured Party does not have a security interest is located in or attached to the Collateral, Secured Party may take such personal property without liability and store it for Debtor. Such personal property will be disposed of by Secured Party if it is not claimed by Debtor within 30 days after it is taken. Any requirements of reasonable notice to Secured Party will be met if such notice is mailed, postage prepaid, to the address of Debtor shown at the beginning of this agreement (or to such other address of which Debtor gives Secured Party written notice) at least ten days before the time of the event set forth in such notice. Debtor will pay Secured Party all expenses incurred by Secured Party in the retaking and holding of, and preparing for sale and selling, the Collateral and in asserting or enforcing Secured Party's rights under this agreement, including, without limitation, all reasonable attorney and paralegal fees and their out-of-pocket costs, and all legal, litigation, court (including bankruptcy and appellate) and other similar costs, allowable by law that are incurred by Secured Party before or after legal proceedings are commenced and concluded, plus interest on such expenses at the rate applicable to the Note.

Debtor agrees it will not be commercially unreasonable for Secured Party, in exercising its remedies under this agreement, (a) to not incur expenses to clean-up or otherwise prepare the Collateral for disposition if it reasonably deems such expenses significant, (b) at its sole reasonable discretion, to advertise dispositions either through publications or media of general circulation or through specialized publications, (c) to dispose of the Collateral in wholesale or retail markets, (d) to dispose of the Collateral by using Internet sites that provide for the auction of similar assets, (e) to sell the Collateral without giving warranties as to the Collateral and to disclaim warranties of title or the like, to the extent permitted by law, or (f) to the extent deemed appropriate by Secured Party, to hire auctioneers or other professionals to assist it in the disposition of the Collateral. Debtor acknowledges and agrees that the foregoing is intended as a non-exhaustive list of actions or omissions of Secured Party that will fulfill its duties under the UCC or other applicable law of Missouri or other relevant jurisdiction and that other actions or omissions not listed will not be deemed to fail such duties by not being listed above. Similarly, nothing in this agreement will grant any rights to nor impose any duties upon Secured Party that would not have been granted or imposed by this agreement or applicable law.

---

**NOTICE: Any holder of this consumer credit contract is subject to all claims and defenses which Debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by Debtor shall not exceed amounts paid by Debtor hereunder.**

---

10. The security interest granted in this agreement will extend to all future advances made by Secured Party to Debtor and to any after acquired property of the same type, kind or nature purchased by Debtor, whether as replacement or otherwise, subject to the UCC ten day limitation on consumer goods. Secured Party, in any present or future transactions between Debtor and Secured Party, waives (a) any security interest in property Debtor uses as a principal dwelling, (b) any non-possessory, non-purchase money security interest in Debtor's household goods and (c) any other security interest prohibited by applicable law.

11. This agreement will be deemed to have been made in the State of Missouri, and will be construed according to the laws of said State, without regard to its choice of law provisions. If any part of this agreement is contrary to any applicable laws, the other parts of the agreement will remain valid, effective and enforceable.

12. The rights and remedies conferred upon Secured Party in this agreement are cumulative and not alternative and are in addition to and not in substitution of or in derogation of the rights and remedies conferred by the UCC and any other laws.

13. All rights of Secured Party under this agreement will inure to the benefit of its successors and assigns, and all obligations of Debtor will bind Debtor's heirs, executors, administrators, personal representatives, successors and assigns. If there is more than one Debtor, their obligations under this agreement are joint and several.

14. At any reasonable times, Debtor will allow Secured Party or its representatives to examine and inspect the Collateral wherever it is located. If the Collateral is inventory or equipment used for business purposes, Debtor will keep accurate books and records of the Collateral and will allow Secured Party or its representative to examine said books and records at any reasonable times, as well as the Collateral itself.

15. Debtor owns the Collateral free and clear of all liens and encumbrances, and Debtor has executed no financing statement nor granted any security agreement covering the Collateral, other than as follows: _____
_____

16. The Collateral will be used primarily for:
☐ personal and family purposes;
☐ business purposes; or
☐ farming operations,
and will be located primarily at: _____

written in connection with this agreement, including, without limitation, any returned premiums and dividends, as additional security, agreeing that Secured Party may cancel any such insurance upon default by Debtor and apply refunds to the balance then secured by this agreement. To the extent of the security interest granted by this agreement, Debtor hereby appoints Secured Party the agent and the attorney for Debtor in procuring, adjusting and cancelling such insurance and endorsing settlement drafts. In the event of loss or damage to the Collateral, Secured Party is expressly authorized (but not required) for and in the name of Debtor, or in Secured Party's name, to make and execute claims and proof of loss under any insurance policy, to compromise and settle any claim under this agreement and to execute releases and other instruments to effect such settlement. Any sum or amounts of money coming into the possession or control of Secured Party by virtue of the payment of any insurance claim or the cancellation of any insurance policy may, at the absolute option of Secured Party, be applied towards the repair or replacement of the Collateral or to the installments secured by this agreement in the reverse order of their stated maturities.

8. Upon occurrence of any of the following events, Debtor will be in default under this agreement: (a) Debtor fails to perform any obligation contained in this agreement or in the Note; (b) Debtor fails to fully comply with any provision of this agreement; (c) any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor was false in any material respect when made or furnished; (d) the dissolution, termination of existence or business failure of Debtor, or any proceeding under any bankruptcy or insolvency laws is commenced by or against Debtor or any guarantor or surety for Debtor, or Debtor makes an assignment for the benefit of creditors; (e) any loss, theft, damage or destruction of the Collateral not covered by insurance required in this agreement; (f) a judgment is entered against Debtor or any guarantor or surety for Debtor in any court in any jurisdiction or any event occurs which results in the acceleration of the maturity of the indebtedness of Debtor to Secured Party or others under any other undertaking; or (g) Secured Party reasonably believes the prospect of Debtor's payment or performance of any obligation contained in this agreement or in the Note, or Secured Party's ability to realize upon the Collateral; is significantly impaired.

9. Upon default or at any time thereafter, Secured Party may, without notice other than that required by law, declare all obligations owed under and secured by this agreement immediately due and payable and will have all the rights and remedies of a secured party under the Uniform Commercial Code of Missouri (as amended from time to time, the UCC) and any other applicable laws. Debtor waives any defenses based on suretyship, impairment of the Collateral, discharge or release of any party or the Collateral and any benefits of any provision of law which would result in the discharge of any party. Debtor,

---

10. The Collateral will be used primarily for:
☐ personal and family purposes;
☐ business purposes; or
☐ farming operations,
and will be located primarily at: _____

Debtor will not change the primary location of the Collateral without giving Secured Party prior written notice of the new address.

## DEALER'S ASSIGNMENT

For value received, the undersigned hereby assigns this agreement, all moneys due and to become due under this agreement and all of its rights, title, interest and remedies in and under this

agreement to ___ Future Finance Company LLC

("Assignee"), its successors and assigns. The undersigned warrants that the statements set forth in this agreement are true; that the Collateral described herein is free of all liens and encumbrances of whatever nature and kind, except the lien and encumbrance created by this agreement and as otherwise stated in this agreement, and if this agreement is secured by a motor vehicle, that the lien will show on the title application that said property was sold to a bona fide time sale transaction, and that the undersigned has not advanced and will not advance any payment to Debtor; that all parties to this agreement had lawful capacity to contract; that the Collateral described in this agreement is in the possession of Debtor, is in good condition and has not been damaged, stolen or destroyed as of the date of this assignment. If any of the warranties contained in this agreement are breached, the undersigned, on demand, will purchase this agreement and the Note secured by this agreement from Assignee, for the balance then remaining unpaid on the Note, together with all earned Finance Charges, whether or not the Note is endorsed by the undersigned with recourse or without recourse or otherwise, and Assignee will have no obligation to assemble and deliver the Collateral to the undersigned as a condition to said repurchase. Further, in the event that any defense to the payment of the debt secured by this agreement is raised by Debtor under Sections 408.400 thru 408.415 of the Missouri revised statutes, or Sections 1 thru 131 of the Kansas Uniform Consumer Credit Code, or Part 433 — Preservation of Consumers' Claims and Defenses—promulgated by the Federal Trade Commission (all as amended), the undersigned, on demand, will purchase this agreement and the Note secured by this agreement from Assignee for the balance then remaining unpaid on the Note, together with all earned Finance Charges, whether or not the Note is endorsed with recourse or without recourse or otherwise, and Assignee will have no obligation to assemble or deliver the Collateral to the undersigned as a condition to said repurchase.

Jay Wolfe Auto Outlet
(Assignor)

By _____

(Name & Title)

---

WITHOUT RECOURSE

PAY TO THE ORDER OF _____

By _____

ENDORSER Jay Wolfe Auto Outlet

(Title) _____

---

WITH RECOURSE

PAY TO THE ORDER OF _____

The undersigned and all endorsers hereof, severally waive presentment for payment, demand, protest and notice of protest, dishonor or non payment, and consent to all extensions and renewals hereof, and agree that any number of extensions or renewals may be made without notice to any of us, and that no extension or renewal shall affect the liability of any of us as endorsers hereof.

ENDORSER _____

(Title) _____

**B**

**Debtor**

Tyrrell Jackson
824 Elizabeth
Independence Mo, 64056

**Secured Party**

FUTURE FINANCE COMPANY
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015

## Notice of Our Plan to Sell Property

Date: 11/05/2010

Subject: Installment Contract Account # 40082

We have your 2003 Ford Explorer Sport because you broke promises in our agreement.

We will sell the 2003 Ford Explorer Sport at a private sale sometime after 11/15/2010. A sale could include a lease or license. You have the right to demand that we sell the 2003 Ford Explorer Sport at a public sale. You must notify us that you demand a public sale on or before 11/15/2010. After that date, we will proceed with our plan to sell the collateral at private sale. If we receive such notice from you within the ten day period, we will send you another notice with the date, time and place of the public sale.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 816-220-5311

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at 816220-5311 or write us at: FUTURE FINANCE COMPANY., 1500 NW SOUTH OUTER ROAD, BLUE SPRINGS, MO 64015, and request a written explanation. We will charge you $25.00 for the explanation of the amount you owe us within the last six months.

If you need more information about the sale, call us at 816-220-5311 or write us at FUTURE FINANCE COMPANY 1500 NW SOUTH OUTER ROAD, BLUE SPRINGS MO 64015.

We are sending this notice to the following other people who have an interest in the 2003 Ford Explorer Sport or who owe money under the agreement.

_____

_____

FUTURE FINANCE COMPANY
_____

Name: _____ Position: President _____

EXHIBIT

B-1

**Debtor**

Liane Jackson
2403 Ne 2nd Street
Independence, Mo 64056

**Secured Party**

FUTURE FINANCE COMPANY
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015

## Notice of Our Plan to Sell Property

Date: 11/05/2010

Subject: Installment Contract Account # 40082

We have your 2003 Ford Explorer Sport because you broke promises in our agreement.

We will sell the 2003 Ford Explorer Sport at a private sale sometime after 11/15/2010. A sale could include a lease or license. You have the right to demand that we sell the 2003 Ford Explorer Sport at a public sale. You must notify us that you demand a public sale on or before 11/15/2010. After that date, we will proceed with our plan to sell the collateral at private sale. If we receive such notice from you within the ten day period, we will send you another notice with the date, time and place of the public sale.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our expenses. To learn the exact amount you must pay, call us at 816-220-5311.

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at 816-943-3520 or write us at: FUTURE FINANCE COMPANY 1500 NW SOUTH OUTER ROAD, BLUE SPRINGS MO 64015, and request a written explanation. We will charge you $ 25.00 for the explanation of the amount you owe us within the last six months.

If you need more information about the sale, call us at 816-220-5311 or write us at FUTURE FINANCE COMPANY, 1500 NW SOUTH OUTER ROAD, BLUE SPRINGS MO 64015.

We are sending this notice to the following other people who have an interest in the 2003 Ford Explorer Sport or who owe money under the agreement.

FUTURE FINANCE COMPANY

Name: _David Wahlmein_          Position _President_

EXHIBIT

B-2

C

# NOTICE OF SALE OF COLLATERAL AND POSSIBLE DEFICIENCY

**DATE OF NOTICE:** 02/16/2011
**DATE OF SALE:** 02/15/2011

**CREDITOR**
FUTURE FINANCE COMPANY LLC
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015
(816) 220-5311

**DEBTOR OR CO-DEBTOR**
Tyrrell Jackson
824 Elizabeth
Independence Mo, 64056
(816) 224-9059

Debtor Acct#                                   40082
Year, Make & Model of Vehicle          2003 Ford Explorer Sport
VIN # of Vehicle                               1FMYU60EX3UA56686

DEAR SIR/MADAM

   This is a written explanation of the amount you still owe us in connection with our repossession of the collateral under the terms of the security agreement involved in the above account.

The amount is comprised of the following items:

| | |
|---|---:|
| Unpaid Balance at Time of Repossession: | $ 10601.48 |
| Less the Sale of Collateral: | $ 10995.00 |
| Net Balance After Sale of Collateral: | $ -393.52 |
| Itemization of Expenses of Sale: | |
| Fee for Repossessing, Storing, and Preparation for Sale: | $ 174.65 |
| Attorney and / or Legal Fees: | $ 1458.99 |
| Repairs: | $ 901.93 |
| **Total Expenses:** | $ 2535.57 |
| **Deficiency: (you owe us)** | $ 2142.05 |

If the sale resulted in a deficiency balance, interest will continue to accrue on that balance at the rate of $1.43 per day until the loan is paid in full.

Any payment or notice in connection with this matter should be made to or addressed to this company.

FUTURE FINANCE COMPANY LLC
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015
(816) 220-5311


EXHIBIT
C-1

# NOTICE OF SALE OF COLLATERAL AND POSSIBLE DEFICIENCY

**DATE OF NOTICE:** 02/16/2011
**DATE OF SALE:** 02/15/2011

**CREDITOR**
FUTURE FINANCE COMPANY LLC
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015
816-220-5311

**DEBTOR OR CO-DEBTOR**
Liane Jackson
2403 Ne 2nd Street
Independence, Mo 64056
(816) 224-9059

| | |
|---|---|
| Debtor Acct# | **40082** |
| Year, Make & Model of Vehicle | **2003 Ford Explorer Sport** |
| VIN # of Vehicle | **1FMYU60EX3UA56686** |

DEAR SIR/MADAM
    This is a written explanation of the amount you still owe us in connection with our repossession of the collateral under the terms of the security agreement involved in the above account.

The amount is comprised of the following items:

| | |
|---|---|
| Unpaid Balance at Time of Repossession: | $ 10601.48 |
| Less the Sale of Collateral: | $ 10995.00 |
| Net Balance After Sale of Collateral: | $ -393.52 |
| Itemization of Expenses of Sale: | |
| Fee for Repossessing, Storing, and Preparation for Sale: | $ 174.65 |
| Attorney and / or Legal Fees: | $ 1458.99 |
| Repairs: | $ 901.93 |
| Total Expenses: | $ 2535.57 |
| Deficiency: (you owe us) | $ 2142.05 |

If the sale resulted in a deficiency balance, interest will continue to accrue on that balance at the rate of $1.43 per day until the loan is paid in full.

Any payment or notice in connection with this matter should be made to or addressed to this company.

FUTURE FINANCE COMPANY
1500 NW SOUTH OUTER ROAD
BLUE SPRINGS MO 64015
(816) 220-5311

EXHIBIT
C - 2