# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| WOLFE AUTOMOTIVE GROUP, L.L.C. and JAY WOLFE USED CARS OF BLUE SPRINGS, LLC,<br><br>Plaintiffs/Counterclaim Defendants,<br>v.<br><br>UNIVERSAL UNDERWRITERS INSURANCE COMPANY,<br><br>Defendant/Counterclaim Plaintiff<br><br>Defendant. | ) | Case No. 4:13-cv-00863-HFS |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**
**AND DAMAGES AND JURY DEMAND**

Plaintiffs Wolfe Automotive Group, L.L.C. and Jay Wolfe Used Cars of Blue Springs, LLC (together "Jay Wolfe"), for its First Amended Complaint for Declaratory Judgment and Damages states as follows:

**Parties**

1. Plaintiff Wolfe Automotive Group, L.L.C. is a Delaware corporation authorized to do business in the State of Missouri, with its principal place of business in Kansas City, Missouri.

2. Wolfe Automotive Group, L.L.C. is the management company that manages the legal, financial, insurance, common treasury and other business matters of Jay Wolfe and its related entities, including managing the contracts and business of the Defendant in the underlying litigation.

3. Jay Wolfe Used Cars of Blue Springs, LLC is managed by Wolfe Automotive Group, L.L.C. and previously did business as Future Finance Corporation.

4. Defendant Universal Underwriters Insurance Company ("Universal") is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business located in Illinois. Universal is licensed and authorized to do business as an insurance company in the State of Missouri, and is authorized to execute and deliver contracts for liability insurance in the State of Missouri.

**Jurisdiction and Venue**

5. The Court has jurisdiction over this action pursuant to RSMo § 527.010, et seq., in that plaintiff seeks a declaration, pursuant to § 527.020, of Universal's obligations to defend and indemnify Jay Wolfe under a contract entered into between Universal and Jay Wolfe.

6. Venue is proper in Jackson County, Missouri because Universal has an office or agent for the transaction of their usual and customary business in Jackson County.

**General Factual Allegations Applicable To All Counts**

7. Jay Wolfe brings this action seeking the interpretation of an insurance policy described below and a declaration of its rights and obligations thereunder.

8. An actual justiciable controversy exists between Jay Wolfe and Universal and litigation as to this controversy is imminent and inevitable because Universal has denied coverage under the policy, thereby exposing Jay Wolfe to losses that are covered by the policy.

9. All necessary and proper parties are before the Court for the matters in controversy.

10. There is no other litigation between Jay Wolfe and Universal concerning their rights and obligations under Universal's policies.

11. Jay Wolfe has no other adequate remedy at law.

## Universal's Insurance Policy

12. Effective April 30, 2012 to April 30, 2013, Defendant Universal issued insurance policies with reference numbers of 279210N and 279211N to Jay Wolfe (the "Policy"). A true and accurate copy of the Policy is attached hereto as Exhibit 1, and is incorporated herein by reference.

## The Underlying Litigation

### *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*

13. On May 24, 2012, Future Finance Corporation, now known and designated as Jay Wolfe Used Cars of Blue Springs, LLC, filed a lawsuit against Tyrell and Liane Jackson on a promissory note with a deficiency balance, arising out of the financing of an automobile purchased by the Jacksons from Jay Wolfe. That case is pending in the Circuit Court of Jackson County as *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, Case No. 1216-CV13289. A true and accurate copy of the original Complaint filed in the *Jackson* Litigation is attached hereto as Exhibit 2, and is incorporated herein by reference.

14. On September 19, 2012, the Jacksons answered the complaint and included a counterclaim alleging violations of Missouri law on behalf of themselves and a putative class of all others similarly situated. A true and accurate copy of the Joint Answer and Counterclaim is attached hereto as Exhibit 3, and is incorporated herein by reference.

15. In the Answer and Counterclaim, the Jacksons admit that, after entering into a retail installment agreement with Jay Wolfe for the purchase of a vehicle and failing to make one or more payments, Jay Wolfe accelerated their payments.

16. The Jacksons also admit that Jay Wolfe repossessed the vehicle and sold it after providing the notice attached to the Complaint (hereafter "Presale Notice").

## Count I of the Counterclaim

17. In Count I of the Counterclaim, based on the Uniform Commercial Code ("UCC"), the Jacksons allege that the Presale notice states, "We will charge you <u>$25.00</u> for the amount you owe us within the last six months." The Jacksons allege that this statement was contrary to, and in violation of RSMo § 400.9-210(f), which provides debtors the right to request an accounting and further provides, in pertinent part, that a debtor "is entitled *without charge* to one response to a request under this section during any six-month period" and that the secured party may only "require payment of a charge not exceeding twenty-five dollars for each *additional* response." (Emphasis added in the Counterclaim.)

18. The Jacksons allege that the Presale Notice was insufficient to satisfy the requirements of Missouri statutes governing such repossession procedures applicable to Jay Wolfe's conduct.

19. The Jacksons allege that Jay Wolfe sent them a "Notice of Sale of Collateral and Possible Deficiency" (hereafter, "Post-sale Notice") advising them that they owed Jay Wolfe a remaining deficiency balance of $2,142.05, which deficiency balance included "Attorney and / or Legal Fees" of $1,458.99, plus interest at the rate of $1.43 per day on such amount.

20. In the Post-sale notice, Jay Wolfe states that "This is a written explanation of the amount you still owe use in *connection with our repossession* of the collateral under the terms of the security agreement involved in the above account." (Emphasis added.)

21. The Jacksons allege that Jay Wolfe's inclusion of "Attorney and / or Legal Fees" as an expense of the sale of the repossessed vehicle violates RSMo § 400.9-6165(c)(4). The Jacksons allege, upon information and belief, that no such expense was reasonably incurred or paid by Jay Wolfe in connection with the sale of the vehicle.



Case 4:13-cv-00868-HFS Document 30-1 Filed 11/14/13 Page 5 of 15
Case 4:13-cv-00868-HFS Document 10-1 Filed 10/09/13 Page 5 of 15

22. The Jacksons allege Jay Wolfe's Presale and Post-sale Notice sent in connection with the policies and procedures Jay Wolfe follows when it repossesses a vehicle, the owners of which are in default, violate the UCC, RSMo §§ 400.9-101, et seq.

**Count II of the Counterclaim**

23. In Count II of the Counterclaim, based on the Motor Vehicle Times Sales Act ("MVTSA"), the Jacksons allege that the attorney's fees assessed violate RSMo § 365.100, which limits attorney's fees the retail seller of a vehicle may assess where a delinquent contract is referred to an attorney not a salaried employee of the retail seller.

24. This allegation arises out of the content of the same Presale and Post-sale Notice discussed above, sent by Jay Wolfe that states "This is a written explanation of the amount you still owe us *in connection with our repossession* of the collateral under the terms of the security agreement involved in the above account."

25. The Jacksons allege that, as a result of the content of the letter and Jay Wolfe's conduct, Jay Wolfe is barred from recovery of any time price differential, delinquency or collection charges associated with the Jacksons' contract.

26. The Jacksons allege that the charges made in connection with the policies and procedures Jay Wolfe follows when it repossesses a vehicle, the owners of which are in default, violate Missouri's Motor Vehicle Time Sales Act ("MVTSA"), RSMo § 365.100, et seq.

27. For relief, the Jacksons request that the Court, on behalf of themselves and members of the putative class, award money damages and other relief.

28. On or about November 5, 2012, Jay Wolfe forwarded the Jacksons' Counterclaim as indicated by the policy to Universal with the request that Universal, as required by the Policy, undertake the defense of Jay Wolfe in the Jackson Litigation.

29. Universal responded to the tender by a letter dated November 6, 2012, stating, in pertinent part:

> We have reviewed the documentation involving Tyrell and Liane Jackson. There is coverage under your policy under Part 500, Garage Operations, Customer Complaint Defense. Please note that Customer Complaint Defense coverage is a defense-only type coverage and does not provide coverage for indemnity or verdicts. Your limits for Customer Complaint Defense coverage are $25,000.000, and a $2,500.00 deductible applies.

A true and accurate copy of the November 6, 2012, letter is attached as Exhibit 4.

30. After requesting further explanation, Universal responded by a letter dated June 25, 2013, stating:

> Based on the foregoing, we believe that Customer Complaint Defense is the only applicable coverage with respect to [the Jacksons'] Counterclaim. Once again, please note that Customer Complaint Defense is a defense only type coverage and does not provide for indemnity or verdicts.

A true and accurate copy of the June 25, 2013, letter is attached as Exhibit 5.

31. Universal has denied Jay Wolfe's request that it provide a full defense to the Jackson Litigation as required by the Policy under Garage Part 500, General Liability Part 660, and Commercial Umbrella Coverage Part 980.

**<u>The Policy</u>**

32. The Declarations provide that the insured, Jay Wolfe, is entitled to coverage under Garage Coverage Part 500 and General Liability Part 660 according to Policy Number 279210N, and Commercial Umbrella Coverage Part 980 according to Policy Number 279211N.

33. The Insuring Agreement under Garage Coverage Part 500 contains the following provisions which require coverage of the dispute at issue:

> 1. Injury
>
> WE will pay those sums the INSURED legally must pay as DAMAGES because of ***INJURY*** to which this insurance applies (including ELECTRONIC


Case 4:13-cv-00863-HFS Document 10-1 Filed 10/09/13 Page 7 of 15

ACTIVITIES), caused by an ***OCCURRENCE*** arising out of ***YOUR GARAGE OPERATIONS or AUTO HAZARD***.

3. Defense Obligations and Rights

   a. WE have the right and duty to defend any SUIT asking for DAMAGES or COVERED POLLUTION DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.
   b. WE will not pay DAMAGES, COVERED POLLUTION DAMAGES or defense costs for any OCCURRENCE, claim or SUIT that is not covered by or declared for this coverage part.
   c. If WE defend an INSURED under a reservation of rights, and a court finds that no insurance applies under this coverage part, YOU must reimburse US for all legal expenses and costs paid on YOUR behalf, including OUR legal expenses incurred to determine coverage.

(Emphasis added.)

34. The following Definitions, under Garage Coverage Part 500, pertain to the above stated Injury and Defense Obligations and Rights provisions of the Insuring Agreement.

"DAMAGES" means:

1. Amounts awardable by a court of law;[1]
2. With respect to INJURY Group 6, DAMAGES also means amounts awardable by administrative agencies, back pay awards, front pay awards, and compensatory damages;
3. [Provision not applicable]
4. DAMAGES does not mean:
   a. Civil penalties, fines, or assessments;
   b. Other statutory awards in excess of compensation, except where insurable by law;
   c. Equitable remedies, except those remedies listed under Part I.2. above;
   d. [Provision not applicable].

"OCCURRENCE" means:

1. [Provision not applicable];
2. With respect to INJURY Groups 3, 4, 5 and 6, acts or offenses of the INSURED which result in such INJURY;
3. [Provision not applicable].

[1] As amended by the Missouri State Amendatory Part which deleted the phrase "including punitive damages where insurable by law" from the definition of "DAMAGES."

ALL INJURY or COVERED POLLUTION DAMAGES arising out of substantially the same general conditions or cause will be considered as arising out of one OCCURRENCE.

OCCURRENCE does not mean any claim or SUIT otherwise covered under AGENT'S E&O, CUSTOMER COMPLAINT DEFENSE, DESIGNATED STATUTE DEFENSE, LABOR RELATED DEFENSE, STATUTE AND TITLE E&O or TRUTH IN LENDING/TRUTH IN LEASING E&O.

"INJURY" means, with respect to:

1. Group 1
    a. Bodily injury, sickness, disease or disability (including death resulting from any of these). This includes INJURY resulting from INCIDENTAL MEDICAL MALPRACTICE.
    b. Damage to, or loss of use of, tangible property. For purposes of this insurance, ELECTRONIC DATA is not tangible property.
2. Group 2
3. Group 3
    a. False arrest or imprisonment;
    b. Malicious prosecution;
    c. Abuse of process;
    d. Wrongful detention;
    e. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of aroom, dwelling or premises that aperson occupies, committed by or on behalf of its owner, landlord or lessor;
    ***f. Wrongful repossession of an AUTO;***
    g. Disparagement of goods or services;
    h. Libel or slander;
    i. Defamation of character;
    j. Private nuisance (except pollution);
    k. Common law claims for invasion of the right of privacy.
4. Group 4 [Provision not applicable];
5. Group 5 [Provision not applicable];
6. Group 6 [Provision not applicable].

"GARAGE OPERATIONS" means the ownership, maintenance or use of that portion of any premises where YOU conduct YOUR garage business. GARAGE OPERATIONS includes all other operations necessary or incidental to YOUR garage business.

GARAGE OPERATIONS does not include the AUTO HAZARD.

(Emphasis added.)

35. The Insuring Agreement under General Liability Coverage Part 660 contains the following provisions which require coverage of the dispute at issue:

1. INJURY

   WE will pay those sums the INSURED legally must pay as DAMAGES because of INJURY to which this insurance applies (including ELECTRONIC ACTIVITIES), caused by an OCCURRENCE arising out of the following hazards when shown in the declarations:
   a. PREMISES HAZARD;
   b. PRODUCTS-COMPLETED OPERATIONS HAZARD;
   c. CONTRACTOR'S HAZARD; or
   d. WATERCRAFT HAZARD.

3. Defense Obligations and Rights

   a. WE have the right and duty to defend any SUIT asking for DAMAGES or COVERED POLLUTION DAMAGES. WE may investigate and settle any claim or SUIT WE consider appropriate. OUR payment of the limit shown in the declarations ends OUR duty to defend.
   b. WE will not pay DAMAGES, COVERED POLLUTION DAMAGES or defense costs for any OCCURRENCE, claim or SUIT that is not covered by or declared for this coverage part.
   c. If WE defend an INSURED under a reservation of rights, and a court finds that no insurance applies under this coverage part, YOU must reimburse US for all legal expenses and costs paid on YOUR behalf, including OUR legal expenses incurred to determine coverage.

36. In addition to the definitions described in paragraph 34 pertaining to Garage Coverage Part 500, excluding the definition for GARAGE OPERATIONS, General Liability Coverage Part 660 adds the definition of PREMISES HAZARD:

> "PREMISES HAZARD" means the ownership, maintenance or use of the premises scheduled in the declarations and all operations necessary or incidental thereto, except the PRODUCTS-COMPLETED OPERATIONS HAZARD.

37. Commercial Umbrella Coverage Part 980 provides umbrella coverage for the claims raised in the Jackson Litigation under the same terms provided in the coverages defined above.


Case 4:13-cv-00863-HFS Document 10-1 Filed 10/09/13 Page 10 of 15

**COUNT I – Declaration Of Rights Under The Policy**

38. Jay Wolfe incorporates the above paragraphs by reference as though fully set forth herein.

39. This action is brought for a declaratory judgment.

40. A controversy exists between the parties concerning their respective rights under the Policy.

41. The claims in the Jacksons' Counterclaim are a covered injury under Garage Coverage Part 500 and General Liability Coverage Part 660, which include coverage for wrongful repossession of an auto.

42. The claims in the Jacksons' Counterclaim arise out of an occurrence as defined in Garage Coverage Part 500 and General Liability Coverage Part 660.

43. The occurrences alleged in the Jacksons' Counterclaim arise out of a covered hazard under Garage Coverage Part 500 and General Liability Coverage Part 660, which include coverage for wrongful repossession of a vehicle.

44. The damages sought in the Jacksons' Counterclaim are damages as defined and covered by the policy.

45. Contrary to Universal's position, the claims in the Jacksons' Counterclaim are not subject to the Customer Complaint Defense provision in the policy.

46. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the aforementioned Policy.

WHEREFORE, Jay Wolfe respectfully requests the Court enter judgment in excess of $25,000 as follows:

a. Declaring Jay Wolfe's rights and Universal's obligations under the Policy;

b. Declaring that the Policy provides indemnity and verdict coverage to Jay Wolfe for the claims in the Jackson Litigation;

c. Declaring that the Policy imposes on Universal a duty to defend Jay Wolfe in the Jackson Litigation;

d. Declaring that Universal is responsible and legally obligated to pay any sum Jay Wolfe is required or obligated to pay in the Jackson litigation, which is covered under the Policy;

e. Awarding reasonable attorney's fees and cost of suit incurred; and

f. Awarding such other and further relief as the Court deems just and proper.

**Count II – Breach of Contract: Failure to Defend**

47. Jay Wolfe incorporates the above paragraphs by reference as though fully set forth herein.

48. Jay Wolfe has performed all conditions of the Policy on its part to be performed, and in accordance with the terms of the Policy, and gave Universal due and timely notice of the Jackson Litigation.

49. Universal's refusal to defend Jay Wolfe in the Jackson Litigation constitutes a breach of the terms and conditions of the Policy.

50. As a proximate result of Universal's failure and refusal to defend Jay Wolfe in the Jackson Litigation, Jay Wolf has been damaged in that it has incurred attorney's fees, costs and expenses.

51. Universal is liable to Jay Wolfe for all damages resulting from that breach.


Case 4:13-cv-00863-HFS Document 10-1 Filed 10/09/13 Page 12 of 15

WHEREFORE, Jay Wolfe respectfully requests the Court enter judgment in excess of $25,000 as follows:

a. Awarding all damages sustained, including payment up to the limits of the Policy, plus attorneys' fees costs and expenses;

b. Awarding interest on that amount per annum at the legal rate;

c. Awarding costs of suit; and

d. Awarding other such and further relief as the Court deems just and proper.

**Count III – Breach of Contract: Failure to Indemnify**

52. Jay Wolfe incorporates the above paragraphs by reference as though fully set forth herein.

53. Universal has a duty under the Policy to indemnify Jay Wolfe for claims asserted against Jay Wolfe in the Jackson Litigation.

54. Universal has anticipatorily breached that duty by failing to indemnify Jay Wolfe for any losses related to the Jackson litigation.

WHEREFORE, Jay Wolfe respectfully requests the Court enter judgment in excess of $25,000 as follows:

a. Awarding all damages sustained, including payment up to the limits of the Policy, plus attorneys' fees costs and expenses;

b. Awarding interest on that amount per annum at the legal rate;

c. Awarding costs of suit; and

d. Awarding other such and further relief as the Court deems just and proper.

**Count IV – Vexatious Refusal to Pay**

55. Jay Wolfe incorporates the above paragraphs by reference as though fully set forth herein.

56. Universal's refusal to defend and indemnify Jay Wolfe was and is vexatious and without reasonable cause or excuse in violation of the terms and provisions of the Policy.

57. Jay Wolfe is therefore entitled to recover damages and penalties pursuant to the provisions of RSMo § 375.420.

58. Jay Wolfe is also, pursuant to § 375.420, entitled to payment of its reasonable attorney's fees.

WHEREFORE, Jay Wolfe respectfully requests the Court enter judgment in excess of $25,000 as follows:

a. Awarding vexatious damages, penalties and interest consistent with RSMo § 375.420.

b. Awarding reasonable attorney's fees;

c. Awarding Jay Wolfe's costs herein expended; and

d. Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Jay Wolfe requests and demands a trial by jury on all issues so triable.



Case 4:13-cv-00863-HFS Document 30-1 Filed 11/14/13 Page 14 of 15
Case 4:13-cv-00863-HFS Document 10-1 Filed 10/09/13 Page 14 of 15

Dated: October 9, 2013

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Norman E. Siegel
Norman E. Siegel MO Bar No. 44378
siegel@stuevesiegel.com
Christopher D. Dandurand MO Bar No. 63775
dandurand@stuevesiegel.com
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on date reflected on the Court's ECF date-stamp, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Norman E. Siegel
Attorney for Plaintiff