**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

Wolfe Automotive Group, LLC, and )
Jay Wolfe Used Cars of Blue Springs, LLC )
                                          )
                    Plaintiffs,           )
                                          )
v.                                        )        Case No. 13-00863-CV-W-HFS
                                          )
Universal Underwriters Insurance Co.,     )
                                          )
                    Defendant.            )

## ORDER

This is an insurance coverage dispute. Pending before the Court are cross-motions for partial summary judgment on the claim and counterclaim for declaratory judgment with regard to the scope of insurance coverage under policies issued by Universal Underwriters Insurance Company (Universal) to Wolfe Automotive Group, LLC and Jay Wolfe Used Cars of Blue Springs, LLC (Jay Wolfe). (Docs. 23, 25).

## Background

Jay Wolfe filed a petition on a promissory note with a deficiency balance against Tyrell and Liane Jackson in the Circuit Court of Jackson County, Missouri. Jay Wolfe Used Cars of Blue Springs v. Jackson, Case No. 1216-CV13289. After the Jacksons failed to make required payments on a car loan used to purchase a car from Jay Wolfe, Jay Wolfe repossessed the car and sued for the deficiency balance on the promissory note. The Jacksons filed a counterclaim, alleging on behalf of themselves, and as a representatives of similarly situated consumers, that Jay Wolfe's practices and procedures involved in the repossession and eventual sale of vehicles violated the Uniform Commercial Code and Missouri's Motor Vehicle Time Sales Act.

Jay Wolfe tendered defense of the Counterclaims to Universal. Universal refused to provide a full defense and indemnity coverage, but offered a limited defense under the "Customer Complaint" provision of the policy, which obligates Universal to pay defense costs of up to $25,000 (subject to a $2500 deductible and $100,000 Large Program deductible). Jay Wolfe demanded a full defense and indemnity coverage of $500,000 (with linked umbrella coverage of up to $25,000,000) asserting that the Jacksons' claims are covered under the "wrongful repossession" provision of the policy.

Jay Wolfe filed this action in Jackson County, Missouri, seeking a full defense and indemnity coverage, and asserting claims for breach of contract and vexatious refusal to pay. Universal removed the action to this Court on diversity grounds, and filed a counterclaim seeking a declaratory judgment that coverage under the policy is limited to defense-only coverage pursuant to the Customer Complaint provision of the policy. The parties filed a joint stipulation of uncontroverted facts and cross-motions for partial summary judgment. The issue before this Court is straight forward: whether the injury alleged in the Jacksons' complaint is covered under the "wrongful repossession" or "customer complaint" provisions of the Universal policy.

**Standard of Review**

Under Federal Rule of Civil Procedure 56(a) summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986). Both sides agree that there are no disputes of fact and that this case turns on the written insurance contract and the legal interpretation of that contract.

Interpretation of an insurance policy is a matter of state law. <u>Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network Inc</u>., 401 F.3d 876, 879 (8th Cir. 2005). In Missouri, the insured has the burden of proving coverage, and the insurer has the burden of proving that an exclusion applies. <u>American Family Mut. Ins. Co. v Co Fat</u>

2

<u>Le</u>, 439 F.3d 436, 439 (8th Cir 2006). In addition, the duty to defend is broader than the duty to indemnify and a duty to defend exists when there is merely the potential for coverage. <u>Universal Underwriters Ins. Co</u>., 401 F.3d at 879. An insurer's duty to defend a suit against its insured is measured by the language of the policy and the allegations of the plaintiff's petition. <u>Scottsdale Ins. Co. v. Ratliff</u>, 927 S.W.2d 531 (Mo.App. E.D. 1996). In construing the policy, each term is given its ordinary lay meaning unless the policy expressly defines a term in a technical manner, and all ambiguities are resolved in favor of coverage. <u>Universal Underwriters Ins. Co.</u>, 401 F.3d at 880. An ambiguity arises only when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. <u>Krombach v. Mayflower Ins. Co.</u>, 827 S.W.2d 208, 210 (Mo. Banc 1992). "Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." <u>Id</u>. Finally, the presence of some insured claims may give rise to a duty to defend and courts interpret the underlying claims broadly. <u>Scottsdale Ins. Co.</u>, 927 S.W.2d at 534. To extricate itself from a duty to defend, the insurance company must prove that there is no possibility of coverage. <u>Allen v. Continental Western Ins. Co.</u>, 2014 WL 2191034 at * 3 (Mo. 2014) (en banc). Thus, this court's inquiry is whether Universal has met its burden of showing that there is no possibility of coverage for the Jacksons' claims under the wrongful repossession provision of its policy.

**Relevant Policy Language**

The relevant policy language is contained in "GARAGE Coverage Part 500"[1]:

> *INSURING AGREEMENT*

---

[1] Jay Wolfe argues that coverage exists under the Garage Operations Section of the policy and also under the General Liability Section of the policy. These two parts of the policy contain identical provisions so the two arguments for coverage are the same.

3

1. Injury

   WE will pay those sums the INSURED legally must pay as DAMAGES because of INJURY to which this insurance applies (including ELECTRONIC ACTIVITIES), caused by an OCCURRENCE arising out of YOUR GARAGE OPERATIONS or AUTO HAZARD.

   \*\*\*

   *DEFINITIONS*

   When used in this coverage part:

   I.      "DAMAGES" means:

           1. Amounts awarded by a court of law;

   \*\*\*

   4. DAMAGES does not mean:

   a. civil penalties, fines or assessments;

   b. other statutory awards in excess of compensation, except where insurable by law;

   c. equitable remedies, except those equitable remedies listed under Part I.2 above

   \*\*\*

   N. "GARAGE OPERATIONS" means the ownership, maintenance or use of that portion of any premises where YOU conduct YOUR garage business. GARAGE OPERATIONS includes all other operations necessary or incidental to YOUR garage business.

   GARAGE OPERATIONS does not include the AUTO HAZARD.

   S. "INJURY" means with respect to:

   \*\*\*

   2.  Group 3

   \*\*\*

4

f. wrongful repossession of an AUTO;

\*\*\*

W. OCCURRENCE means:

  \*\*\*

3. with respect to INJURY Groups 3,4,5 and 6, acts of offenses of the INSURED which result in such INJURY.

\*\*\*

OCCURRENCE does not mean any claim or SUIT otherwise covered under . . . CUSTOMER COMPLAINT DEFENSE . . . .

G.CUSTOMER COMPLAINT DEFENSE" means any SUIT filed against YOU by or on behalf of a wholesale or retail customer arising out of:

1. YOUR sale, lease, rental, service or repair or YOUR PRODUCT.

\*\*\*

CUSTOMER COMPLAINT DEFENSE does not mean any SUIT:

1. Filed against an INSURED as a result of an OCCURRENCE;

\*\*\*

**Jacksons' Claim**

The Jacksons entered into a Retail Installment Agreement with Jay Wolfe for the purchase of a 2003 Ford Explorer. Sometime later, the Jacksons failed to make required payments and Jay Wolfe took possession of the vehicle as provided for in the Retail Installment Agreement, and sent the Jacksons a "Notice of our Plan to Sell Property" ("Presale Notice"). Jay Wolfe ultimately sold the vehicle and then sent the Jacksons a "Notice of Sale of Collateral and Possible Deficiency" (Post-sale Notice). The notice advised the Jacksons that they owed a remaining deficiency balance that

5

included "Attorney and/or Legal fees" of $1,458.99," plus continuing interest at the rate of $1.43 per day.

The Jacksons complaint against Jay Wolfe involves two different improprieties. First, the Jacksons allege that the Presale Notice violated Mo. Rev. Stat. § 400.9-210(f). Specifically, the Presale Notice stated that a written explanation of the deficiency balance would be provided at a $25.00 charge. The Jacksons claim this statement is in violation of Mo. Rev. Stat. § 400.9-210(f). That section gives debtors the right to request an accounting and further provides that a debtor is entitled <u>without charge</u> to one response to a request during any six-month period and that the secured party may only "require payment for a charge not exceeding twenty-five dollars for each <u>additional</u> response." (Emphasis added).

Second, the Jacksons allege that Jay Wolfe improperly included $1458.99 in "Attorney and/or Legal Fees" as an expense of sale when no such expense was actually incurred or paid by Jay Wolfe. Mo. Rev. Stat. § 400.9-615(a) provides only for recovery of reasonable attorneys' fees and legal expenses actually incurred. In addition, Mo. Rev. Stat. § 365.100 limits attorney's fees to an amount not exceeding 15 percent of the deficiency balance and to "a reasonable expense incurred." The Jacksons also allege a violation of Mo. Rev. Stat. § 400.9-616(c)(4) because Jay Wolfe failed to provide an explanation of the deficiency balance.

As damages, the Jacksons assert that Jay Wolfe is barred from asserting a deficiency balance against them and they also seek statutory damages provided for in § 400.9-625(c)(2) and relief from any adverse credit reports made by Jay Wolfe to credit reporting agencies. In addition, they seek an order barring Jay Wolfe from recovering any time price differential, delinquency, or collection charges on the class members'

6

contracts, and an order of refund of any improper charges, attorneys' fees, and punitive damages pursuant to Mo. Rev. Stat. §§ 365.145, 365.150 and 408.625.

**<u>Insurance Coverage</u>**

Jay Wolfe contends that Universal has a duty to defend and indemnify under two similar provisions of the Universal Policy. Jay Wolfe argues that the Jacksons claims fall under Part 500 (GARAGE) and Part 660 (GENERAL LIABILITY) which includes as a covered injury: "wrongful repossession of an AUTO."

In Missouri a claim for wrongful repossession is characterized as a claim based on conversion. <u>See</u> <u>Scott v. Twin City State Bank</u>, 537 S.W.2d 641 (Mo. App. W.D. 1976). A claim for conversion may be shown by establishing: (1) a tortious taking; (2) any use or appropriation to the use of the person in possession, indicating claim of right in opposition to the true owner's rights; or (3) by a refusal to give up possession to the owner on demand, even though the defendant's original possession was proper. <u>Mackey v. Goslee</u>, 244 S.W.3d 261, 263-64 (Mo. App. S.D. 2006). Jay Wolfe acknowledges that the Jacksons' claims are neither based on conversion nor include an allegation of a wrongful taking of property. Nevertheless, Jay Wolfe's position is that because the Jacksons' claims are based on illegal and wrongful business practices and policies surrounding Jay Wolfe's repossession of automobiles, coverage exists under the wrongful repossession provision of the Universal policy.

For support, Jay Wolfe cites <u>Universal Underwriters Ins. Co v. Lou Fusz Automotive Network Inc.</u>, 401 F.3d 876 (8th Cir. 2005). In that case, a car dealership was sued for sending unsolicited faxes in violation of the Telephone Consumer Protection Act. The dealership sought coverage from Universal under a similar policy, arguing that the TCPA violations represent both private nuisances and invasions of the

7

right of privacy, covered injuries under the policy.    300 F.Supp.2d 888, 894 (E.D. Mo. 2004).   Universal's position for denying coverage in that case was that the TCPA violation was not a "private nuisance" or "invasion of the right of privacy" under Missouri law.   The district court rejected Universal's attempt to tie the definition of private nuisance and invasion of the right of privacy to Missouri's common law elements for these torts. Id. at 895.   The Eighth Circuit affirmed, and held that the definitions Universal suggested were not the  plain and ordinary meaning of the respective terms, and that "technical and restricted legal definitions" did not govern.  401 F.3d at 882. Jay Wolfe relies on the language from Lou Fusz to support its argument that the definition under the policy does not need to equate to a wrongful repossession/conversion under Missouri common law in order for coverage to exist.

Jay Wolfe states that the term "wrongful repossession" used in the policy is unambiguous, and therefore, this Court must apply the ordinary, lay definition to the term. (Br. At 7, n.5) Citing Black's Law Dictionary, Jay Wolfe defines "wrongful" as "characterized by unfairness or injustice or contrary to law;  unlawful." (Br. at 7).   Jay Wolfe's position is simple:   "If Jay Wolfe's policies and procedures called into question in the Jacksons' complaint are deemed to be 'unlawful,' then under the lay meaning of the term the policies and procedures are always wrongful.   And a possession that utilizes such policies and procedures would therefore be a 'wrongful repossession.'" (Br. at 7-8).   "An ordinary, lay person would understand improper or illegal conduct in order to effectuate the repossession of an automobile to be included in the phrase ""wrongful repossession of AUTO."  (R. Br. at 3).

Universal agrees that the policy language is unambiguous. Universal, however, takes issues with the definition recommended by Jay Wolfe, and argues that Jay Wolfe's definition ignores the "repossession" component of the policy language.  Universal points to the Merriam Webster dictionary and states that "wrongful' means "wrong" "unjust"

8

unlawful" or "having no legal sanction" or "no legal claim."  (Reply Br. 5). Universal maintains that a "wrongful repossession" is the unlawful retaking of property or more specifically, a retaking of property that is unlawful because the buyer is not in default on his installment payments.  Simply put, Universal says that the "wrongful repossession of an auto" must include a wrongful taking of property, and that both parties agree that there was no wrongful retaking of property.

In <u>Lou Fusz</u>, the district court determined that the unsolicited sending of faxes in and of itself amounted to a "private nuisance" and "invasions of privacy" under the ordinary, lay meaning of the phrases.  The Eighth Circuit likewise examined the acts constituting the alleged injury in <u>Lou Fusz</u> to decide whether the acts constituted a private nuisance or invasion of privacy. Examining the predicate acts and injury alleged in the Jackson suit, it is undeniable that the Jacksons' claims are centered on Jay Wolfe's calculation of deficiency balances when collecting on a promissory note. Although there was a repossession of a vehicle, the injury the Jacksons complain about, unlike the <u>Lou Fusz</u> case, is not connected to the policy language itself - repossession of the vehicle -  but instead, the inclusion of certain fees in Jay Wolfe's calculation of the deficiency balance, remotely associated with the event referred to in the policy (if "wrongful").

The injury alleged by the Jacksons does not fall within the ordinary, lay definition of "wrongful repossession of an AUTO." Universal has met its burden of showing that there is no duty to defend under this provision of the policy.[2]  For these reasons, summary judgment in favor of Universal is appropriate with respect to coverage under the Garage and General Liability Provisions of the Universal policy.

---

[2] This conclusion makes it unnecessary to address Universal's alternative argument that the alleged claim does not arise out of a "PREMISES HAZARD."

It may be useful to retrace the rationale that I find compelling here. One may suppose that a business owner like plaintiff would wish to be insured against liability for blunders occurring in the collection of debts from purchasers. But the insurance obtained quite plainly does not offer blanket coverage for all collection errors. It is limited to alleged misconduct in collections associated with repossessions. This restriction is apparently conceded by plaintiff. But the restriction is not confined to all situations involving repossessions. There is the further, plain language, reference to repossessions that are "wrongful." Nothing supports the strained reading that would separate the two pertinent words - the coverage does not apply to all wrongful conduct occurring in collections involving repossessions. By plaintiff's reading, the word "wrongful" is simply redacted from the sentence. Even in reading provisions most favorably for insureds one cannot fairly ignore the restrictive word or wrench it out of the phrasing and say it simply refers to alleged wrongful conduct in general, unrelated to repossessions. Having accepted limited coverage for wrongs occurring in collection efforts, plaintiff must necessarily accept the further restriction of coverage to collection efforts where there is a "wrongful repossession."[3]

Universal has filed a cross-motion for summary judgment seeking a declaration that the only coverage for the claims asserted by the Jacksons is pursuant to the "Customer Complaint Defense" provision of the policy. This coverage is triggered upon the filing of a suit by a customer arising out of the sale, lease, rental, service or repair of a Jay Wolfe product. Jay Wolfe does not dispute coverage under this provision other than to say the claim is covered under the wrongful repossession provision of the policy.

---

[3] I accept plaintiff's contention that the wrongful conduct in repossessions does not necessarily exactly conform to common law definitions, which are not likely known to prospective insureds - - although how much departure from the common law is not entirely predictable. The wrong cannot, however, be entirely disassociated from the repossession if the plain language used in the policy is to be honored.

10

Accordingly, summary judgment in favor of Universal on their claim that coverage is limited to the customer complaint provision of the policy is GRANTED.

As far as the umbrella coverage, both parties agree that such coverage exists only if there is coverage under the Garage Operations (Part 500) or General Liability (Part 660). (Jay Wolfe Br. at 9, Reply Br. at 5). The policy specifically excludes umbrella coverage for claims under the Customer Complaint provision. See Dan Nelson Auto. Group v. Universal Underwriters Group, 2008 WL 10084, at * 9 (D.S.D.) (analyzing similar policy and noting exclusion). Accordingly, there is no duty to defend or indemnify under the umbrella coverage. Summary judgment in favor of Universal is appropriate with respect to coverage under the umbrella policy.

**Conclusion**

Accordingly, for the reasons set forth above, Jay Wolfe's Motion for Summary Judgment is DENIED. (Doc. 25). It is further

ORDERED that Universal's Motion for Summary Judgment is GRANTED (Doc. 23). It is further

ORDERED that Universal is entitled to judgment as a matter of law with respect to each of the claims asserted in Jay Wolfe's First Amended Complaint for Declaratory Judgment. (Doc. 30).

SO ORDERED.

/s/ Howard F. Sachs
HOWARD F. SACHS
United States District Court Judge

September  24 , 2014

Kansas City, Missouri

11